**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

WILLIAM T. GRANT,

                                        Plaintiff,

       - v -                                         Civ. No. 9:14-CV-1382
                                                                            (MAD/DJS)

BRIAN FISCHER, *Commissioner; New York State Dep't
of Corrections and Community Supervision*; D. VENETTOZI;
*(Acting) Director; Special Housing, Inmate Disciplinary
Program*; R. BOISSY, *Senior Correctional Counselor;
Great Meadow Correctional Facility*; WINNEY, *formerly
known as* ATKINSON,

                                        Defendants.

**APPEARANCES:**                                       **OF COUNSEL:**

WILLIAM T. GRANT
Plaintiff, *Pro Se*
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582

HON. ERIC T. SCHNEIDERMAN                  ORIANA L. CARRAVETTA, ESQ.
Attorney General of the State of New York      Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

*Pro se* Plaintiff William T. Grant brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that the Defendants violated his constitutional rights while he was incarcerated at Great Meadow Correctional Facility, in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 23, Am. Compl. Specifically, Grant challenges the

due process he was afforded in connection with a Disciplinary Hearing he received as a result of being issued a Misbehavior Report. Currently pending before the Court is Defendants' Motion for Summary Judgment (Dkt. No. 44) which Plaintiff opposes (Dkt. No. 48). Additionally, Defendants' submitted a Reply (Dkt. No. 53), to which Plaintiff filed a Sur-Reply (Dkt. No. 57). Upon due consideration, it is recommended that Defendants' Motion be **granted** and this case be **dismissed**.

## I. STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings,*

*Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. DISCUSSION

### A. Facts

Generally, the facts are not reasonably in dispute; where, however, discrepancies exist, the Court will so note. On October 6, 2011, Plaintiff was served with a Misbehavior Report, dated October 5, 2011, authored by Dennis Klose, who at that time was employed by DOCCS as an Investigator with the Office of Special Investigation ("OSI"). Dkt. No. 44-1, Defs.' Statement Pursuant to Rule 7.1(a)(3) [hereinafter "Defs.' 7.1 Statement"], at ¶¶ 1 & 2; Dkt. No. 53-1, Dennis Klose Decl., dated Aug. 5, 2016, at ¶ 1. The Misbehavior Report charged Plaintiff with violating several prison rules, including Rule 113.25 – "[a]n inmate shall not conspire with any person to introduce 'Heroin' narcotics into the facility"; Rule 114.10 – "[a]n inmate shall not solicit others to smuggle any item into the facility"; and Rule 121.11 – "[a]n inmate shall not engage in a third-party phone call". Dkt. No. 44-5, Robert Boissy Decl., dated May 3, 2016, Exs. B & C. In the "Description of the Incident" portion of the Misbehavior Report, Investigator Klose wrote the following:

> On [September 8, 2011 at 9:42 p.m.] Inmate Grant [DIN 95-A-3324] did activate his state pin # and dialed 631-952-5530. Once on the phone Grant had the Female three way him to an unknown male. During that phone conversation, Grant did solicit and conspire with the mail to make arrangements to have the male package up a quantity of narcotics to be smuggled into Grant during visit that was to take place on 9/10/11. Phone calls that followed continued to have Grant soliciting and conspiring with the person on the phone to have narcotics smuggled into him during a visit.

*Id.*, Ex. A.

On October 7, 2011, Plaintiff met with Defendant Jessica Winney, his assigned inmate assistant. Defs.' 7.1 Statement at ¶ 4. During the meeting, the two discussed what documents Plaintiff sought and whether he wanted to call witnesses. Defs.' 7.1 Statement at ¶ 7. While Plaintiff provided Defendant Winney with a list of requests for documentary evidence, he maintains

that Winney failed to explain the charges to him and therefore he did not have an understanding of what witnesses to call. Defs.' 7.1 Statement at ¶ 7; Dkt. No. 48, Pl.'s Resp. to Statement Pursuant to Rule 7.1(a)(3) [hereinafter "Pl.'s Resp. 7.1 Statement"], at ¶¶ 7 & 12. Of the ten items requested by Plaintiff, five were provided and reasons were given for those not provided; no witnesses were identified to be contacted or to testify on Plaintiff's behalf. Defs.' 7.1 Statement at ¶¶ 9 & 12; Pl.'s Resp. 7.1 Statement at ¶ 12.

On October 17, 2011,[1] Plaintiff's Tier III Disciplinary Hearing commenced, and Defendant Robert Boissy presided. Defs.' 7.1 Statement at ¶ 13. At the outset of the Hearing, which was recorded, Plaintiff acknowledged that he did not choose to have any witnesses when he previously met with his assistant. Defs.' 7.1 Statement at ¶¶ 14 & 15. Boissy then read the Misbehavior Report into the record and asked Plaintiff to enter pleas as to each charge; Plaintiff entered pleas of not guilty to all three charges. *Id*. at ¶ 17. Throughout the Hearing, Plaintiff raised several objections, all of which were noted on the record. *Id*. at ¶ 18; *see also* Boissy Decl., Ex. B. Most of Plaintiff's objections centered around complaints about Winney's failure to provide him with all of his requested documents and the fact that she did not explain the charges to him. It is because of these shortcomings that Plaintiff claimed he had no understanding of what was happening. Pl.'s Resp. 7.1 Statement at ¶ 19. In his defense, Plaintiff presented documentation regarding his approved visiting schedule, which showed that Plaintiff was not authorized to receive a visitor on September 10, 2011, the date referenced in the Misbehavior Report. Boissy Decl., Ex. B at Bates Stamp 38.

Although not requested by Plaintiff, Boissy called Inspector Klose as a witness. Defs.' 7.1

---

[1] As noted during the Hearing, extensions of time within which to conduct the Hearing were sought and granted; copies of that paperwork were provided to Plaintiff. Boissy Decl., Ex. B at Bates Stamp 35. The timing of the Hearing is not part of the Due Process claims raised by Plaintiff herein.

Statement at ¶ 20. Inspector Klose testified that the Misbehavior Report was accurate. *Id*. at ¶ 21. He further explained that the weekend of September 10th was the family festival and Plaintiff had made arrangements for family members, including his brother, to visit him; but that visit ultimately did not take place. Boissy Decl., Ex. B at Bates Stamp 41. Plaintiff declined the opportunity to question Klose at that time. Defs. 7.1 Statement at ¶ 22; Pl.'s Resp. 7.1 Statement at ¶ 22.

At that point in the Hearing, Boissy granted Plaintiff's request to listen to the audio recordings of two taped telephone conversations[2] and the tapes were played off the record. Defs.' 7.1 Statement at ¶ 23. After listening to the tapes, Plaintiff asked to change his plea to guilty regarding the charge of making a third-party telephone call. *Id*. at ¶ 25. Plaintiff then complained of his inability to understand the charges against him and his confusion as to the meaning of "conspire" and "solicit," to which Boissy provided a definition for each. Boissy Decl., Ex. B at Bates Stamp 44-45. Plaintiff confirmed that he had no further evidence to submit, and the Hearing adjourned so Boissy could make a written disposition. *Id*. at Bates Stamp 45.

At the conclusion of the Hearing, Boissy found Plaintiff guilty of all the charges and imposed a penalty of nine months in the special housing unit ("SHU"), with corresponding loss of privileges, and a recommendation of six months loss of good time. Defs.' 7.1 Statement at ¶ 26. In his written statement, Boissy listed the evidence he relied upon in rending the guilty dispositions: (1) audiotape

---

[2] It is not clear whether the recorded phone conversations occurred on the same date. In the course of reviewing the current Motion, the Court directed the Defendant to provide to the Court, with copies provided to the Plaintiff, "hard copies of the transcripts and audio recordings of the **telephone calls** at issue in the October 2011 Misbehavior Report." Dkt. No. 59 at p. 3 (emphasis added). In response, the Court received a partial transcription and cassette tape. Dkt. No. 61. It is not clear what date the recorded phone call was made and whether more than one call is included on the recording, though there are multiple three-way connections made throughout the recording provided. Because the documentation provided to the Court suggests more than one call was made, including a further statement from Inspector Klose which establishes that Plaintiff's calls were monitored on multiple dates, the Court accepts, for purposes of this Motion, that multiple calls were at issue in this Misbehavior Report. Dkt. No. 53-1, Dennis Klose Decl., dated Aug. 5, 2016, at ¶ 9 & Attach., IG Report of Compl. Progress

of the telephone conversations; (2) Grant's testimony; (3) Misbehavior Report, dated October 5, 2011; (4) Investigator Klose's testimony; (5) 2011 visiting schedule; (6) inmate log of visits; and (7) inmate phone log. *Id.* at ¶ 27. In supplying a reason for the disposition, Boissy explained that the behavior at issue posed a threat to the safety and security of the facility and the disposition was imposed to "dissuade, deter, and refrain, from future behaviors." Boissy Decl., Ex. C at Bates Stamp 62. The disposition, punishment, statement of evidence, and reason for disposition were all read into the record. Defs.' 7.1 Statement at ¶ 29.

Plaintiff protested the disposition claiming he wanted to ask the investigator some questions. Boissy Decl., Ex. B at Bates Stamp 46. Boissy responded that he had the opportunity to do that but declined. *Id.* Plaintiff refused to sign the copy of the disposition and objected to the cessation of the Hearing claiming he had not had an ample opportunity to prepare a defense having only heard the tapes for the first time that day. Boissy Decl., Ex. B at Bates Stamp 46-47. In response, Boissy again advised Plaintiff of his right to appeal and the Hearing concluded. *Id.* at Bates Stamp 47.

Plaintiff appealed the disposition, and on December 13, 2011, Defendant Donald Vennetozzi, Acting Director of Special Housing/Inmate Disciplinary Program, affirmed the Hearing disposition. Defs.' 7.1 Statement at ¶ 35. Following the initiation of a State court proceeding, brought by Plaintiff pursuant to Article 78, the disposition of the Tier III Hearing was reversed without explanation. *Id.* at ¶ 36. Plaintiff's Article 78 petition was then rendered moot. Am. Comp. at ¶ 37.

### B. Due Process

By his Amended Complaint, Plaintiff asserts that his Due Process rights were violated by the Defendants in several ways. With regard to Defendant Winney, Plaintiff claims that she did not provide him with adequate assistance when she, without satisfactory explanation, denied him

documents he sought, and when she failed to explain the charges against him such that he could properly prepare a defense. Am. Compl. at ¶¶ 18, 19, 24, 38(1), & 38(2). Plaintiff also claims that Defendant Boissy violated his constitutional rights when he failed to explain the charges to Plaintiff, thus impeding his ability to present a defense; denied Plaintiff the right to call witnesses; and convicted Plaintiff without any evidence. *Id*. at ¶¶ 27-29, 31, 38(2), 38(4), & 38(5). As for Defendants Brian Fischer, then-Commissioner of DOCCS, and D. Venettozi, Plaintiff asserts that Venettozi, acting on Fischer's behalf, upheld Boissy's disposition, thereby allowing the constitutional violations to stand.

### *1. Liberty Interest*

The Due Process Clause of the Fourteenth Amendment protects against restraints or conditions of confinement that "exceed[] the sentence in . . . an unexpected manner[.]" *Sandin v. Conner*, 515 U.S. 472, 484 (1995). But, in order to state a due process claim under § 1983, an inmate must first establish that he enjoys a protected liberty interest. *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Inmates' liberty interests are derived from two sources: (1) the Due Process Clause of the Fourteenth Amendment; and (2) state statute or regulations. *Id*.

With regard to liberty interests arising directly under the Due Process Clause, the Supreme Court has "narrowly circumscribed its scope to protect no more than the 'most basic liberty interests in prisoners[,]'" *Arce v. Walker*, 139 F.3d at 333 (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)), and limited to freedom from restraint that "exceed[] the sentence in . . . an unexpected manner[,]" *Sandin v. Conner*, 515 U.S. at 478.

Whereas those liberty interests created by the state, the Supreme Court states that such

liberty interests shall be limited solely to those deprivations which subject a prisoner to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. at 484; *see also Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citing *Sandin*); *Welch v. Bartlett*, 196 F.3d 389, 392 (2d Cir. 1999).

In assessing what constitutes an atypical and significant hardship, "[b]oth the conditions [of confinement] and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (citation omitted)). Factors relevant to this inquiry include "(1) the effect of disciplinary action on the length of prison confinement; (2) the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions; and (3) the duration of the disciplinary segregation imposed compared to discretionary confinement." *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998) (citing *Sandin*, 515 U.S. at 484).

While the Second Circuit has cautioned against a "bright-line rule regarding the length or type of sanction, *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999), it has nevertheless stated that "[w]here the plaintiff was confined for an intermediate duration – between 101 and 305 days – development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer v. Richards*, 364 F.3d at 64-65 (quoting *Colon v. Howard*, 215, F.3d 227, 232 (2d Cir. 2000)).

Here, Plaintiff was confined in SHU for approximately 270 days. Am. Compl. at p. 19; Dkt. No. 44-2, Defs.' Mem. of Law, at p. 9 (stating that, pursuant to Plaintiff's deposition testimony, he served almost the full nine months of his disciplinary sentence). Accordingly, the court must "make

a fact-intensive inquiry" that would examine the actual conditions of his confinement within SHU. *Palmer v. Richards*, 364 F.3d at 65 (citations omitted); *see also Wright v. Coughlin*, 132 F.3d at 137. Where, as here, the conditions of confinement are undisputed, a court may decide the *Sandin* issue as a matter of law. *Palmer v. Richards*, 364 F.3d at 65.

Defendants argue that the Plaintiff's description of his conditions of SHU confinement are no more onerous or constricting than that of normal SHU conditions. The first month of Plaintiff's disciplinary confinement was served at Great Meadow, and he was then transferred to Southport Correctional Facility, where he served the rest of his SHU confinement. Plaintiff asserts that during the time at Great Meadow, which fell between October and November, it was cold, he was denied adequate warm clothing, and spent approximately one or two weeks without adequate bedding, including a blanket or pillow. Dkt. No. 44-3, Oriana Carravetta, Esq., Affirm., dated May 3, 2016, Ex. A, William T. Grant Dep. Tr., dated Dec. 17, 2015 [hereinafter "Pl. Dep. Tr."], at pp. 28-29. Plaintiff received only an hour of recreation time, per day, in a small cage; had only two or three showers per week lasting only five minutes in duration; had no newspapers or magazines; mail was delivered late; and had no access to cleaning supplies such that he could sanitize his living area. *Id*. at pp. 30-31. For the seven-to-eight months spent in SHU at Southport, Plaintiff had limitations on his visitation; showered approximately two times per week; had to initially go to recreation time with a chain around his waist and his hands cuffed, causing an increase of the effects of the cold temperature; sometimes was limited to recreation only a couple times a week; had smaller food portions; and endured delays in getting materials and personal items. *Id*. at pp. 33-35. In addition, Plaintiff contends that his time in SHU overall put a strain on his companion relations given the limitations posed on visitation and that his medical conditions, both physical and mental, worsened

as a result of his confinement. Am. Compl. at ¶¶ 39(1) & 39(4). For example, Plaintiff contends that he required physical therapy due to the limited amount of movement he had and the deprivation of exercise. *Id.*; *see also* Dkt. No. 48-1, William T. Grant Decl., dated July 15, 2016, at ¶ 31. And, he suffered "mental, physical, psychological, and psychosomatical harm and damages" as a result of the total confinement. Am. Compl. at ¶¶ 39(1) & 39(4). While many of these conditions seem to coincide with typical conditions in SHU, the Court finds that the additional allegations with regard to the temperature and sanitary conditions combined with the amount of days Plaintiff spent in SHU, may, at least for purposes of the current Motion, constitute atypical and significant conditions such that I may properly consider what due process protections Plaintiff was afforded.

### 2. *Due Process Protections*

Once a prisoner makes a threshold showing of atypical and significant confinement, the court should determine whether that prisoner, prior to his confinement, was afforded the minimum requirements of due process. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Although due process does not afford a prison inmate "'the full panoply of rights' due to a defendant in a criminal prosecution . . . . an inmate is entitled to [1] advance written notice of the charges against him; [2] a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; [3] a fair and impartial hearing officer; and [4] a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing *Wolff v. McDonnell*, 418 U.S. at 556 & 563-67).

In the case at bar, Plaintiff challenges the adequacy of the assistance he received from

Defendant Winney prior to the Hearing, and claims that Boissy, his Hearing Officer, was biased.³ The Court will consider each of these *seriatim*.

b. Adequate Assistance

Generally, in circumstances such as here where an inmate is in segregated confinement prior to a disciplinary hearing, he is entitled to the services of an assistance who, in good faith and with the inmate's best interests in mind, can help him to "marshal evidence and present a defense." *Eng v. Coughlin*, 858 F.2d 889, 898 (2d Cir. 1988); *see also* Boissy Decl., Ex. A (noting Plaintiff was put in keeplock after being served with the Misbehavior Report); Pl.'s Dep. Tr. at p. 10 (noting same). Such assistance is generally understood to encompass those tasks that the inmate would perform, nothing more. *Silva v. Casey*, 992 F.2d 20, 22 (1993). Importantly, an inmate is not entitled to have the employee assistant act as his advocate or counsel, for which he is not entitled. *Id*. (citing *Wolff v. McDonnell*, 418 U.S. at 570). While the contours of this right is not precisely defined, the Second Circuit has provided at least a floor of what it should include, namely "gathering evidence, obtaining documents and relevant tapes, . . . interviewing witnesses" as well as performing the "investigatory tasks which the inmate, were he able, could perform for himself." *Eng v. Coughlin*, 858 F.2d at 898.

---

³ The Court notes that Defendants submitted a Reply solely to contest what was perceived to be Plaintiff's challenge to the adequacy of the notice provided in the Misbehavior Report. Dkt. No. 53, Defs.' Reply. First, I note that Plaintiff's challenge in his Amended Complaint to the adequacy of the notice he received was dismissed by the Honorable Mae A. D'Agostino, United States District Judge, March 4, 2015, when she initially reviewed the Complaint, Dkt. No. 13 at pp. 9-11, and that ruling was reiterated on July 10, 2015, upon her screening of the Amended Complaint, Dkt. No. 26 at pp. 4-5. Thus, pursuant to the law of the case doctrine, Plaintiff has no basis upon which to challenge the notice aspect in his Due Process claim. *In re PCH Assoc*, 949 F.2d 585, 592 (2d Cir. 1991) (noting that the law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"). Nevertheless, the Court agrees that, to the extent Plaintiff challenges the timing of the issuance of the Misbehavior Report, which was written practically one month after the alleged Rule violations occurred, as violative of DOCCS regulations and therefore actionable in this Court, a violation of State law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983. *Doe v. Conn. Dep't of Child and Youth Servs.*, 911 F.2d 868, 869 (2d Cir. 1990); *Farid v. Demars*, 2009 WL 455450, at *6 n.6 (N.D.N.Y. Feb. 23, 2009).

At the heart of Plaintiff's claim against Defendant Winney is her failure to provide to him with all the items that he requested and her failure to explain the charges to him. Am. Compl. at ¶¶ 18-19. I can easily dispose of the latter complaint, for it is clear that the Second Circuit does not impose the burden on an assistant to undertake the role of appointed counsel and provide any such legal advice. Thus, no due process violation occurred when Winney failed to explain the charges.

Furthermore, the notion that Plaintiff did not fully understand the contours of the charges against him is belied by his detailed list of items sought from his assistant. As noted above, when Plaintiff met with Winney prior to his Hearing, he provided her with an itemized list of ten requests, of which he received at least five. Dkt. No. 44-4, Jessica Winney Decl., dated May 3, 2016, Ex. C. He did not ask her to interview anyone, nor did he indicate anyone he wanted to call as a witness. The documents Winney provided to Plaintiff included 1) "Chapter V";[4] 2) statement of dates and times subject phone calls were made, plus his individual call log sheet; 3) his visitor log record; 4) 2011 facility visiting schedule; and 5) copy of DOCCS Directive 4423.[5] *Id.* Indeed, these documents were utilized by Plaintiff during the Hearing in support of his defense of innocence.

As to all other remaining requests, Winney provided a response indicating that the items were either not available, not allowed, or did not exist.[6] Of all the items requested, it is Winney's

---

[4] Though never overtly clarified, it seems that this request is for a section in the New York Compilation of Codes, Rules, and Regulations, dealing with Correctional Facilities. Chapter V deals with Standards of Behavior & Allowances, and specifically covers disciplinary hearings. At his deposition, Plaintiff claimed that Winney did not provide him with that request, however, upon being presented with a signed acknowledgment of receipt, Plaintiff recanted that prior testimony. *Compare* Pl.'s Dep. Tr. at pp. 15 & 19 *with* p. 46.

[5] Plaintiff initially denied that he received Directive 4423, but corrected his testimony upon being presented with a signed acknowledgment of receipt. *Compare* Pl.'s Dep. Tr. at p. 19 *with* p. 46.

[6] For example, in responding to Plaintiff's request for Chapter V Annotation, Winney directed Plaintiff to contact the law library. Winney Decl., Ex. C. And she did not provide him with attendance sheets from his assigned programs on October 5 and 6, 2011, because he had been in keeplock confinement. *Id.*

responses to his requests for copies of all reports and documents pertaining to the incident and for the tape and transcripts of the recorded calls that Plaintiff takes issue. According to Plaintiff, by denying him these particular items, he suffered prejudice in preparing an adequate defense because he did not know the person he was alleged to have conspired and solicited and he was unaware of the content of the calls at issue, having transpired more than one month prior to the Report being issued. The Court does not agree. First, with regard to request for all reports and documents pertaining to the incident, Winney indicated that he was not allowed to have those items, and, as explained in her Declaration to the Court, she did so for security purposes. Winney Decl. at ¶ 11. As for the recordings of the calls at issue, Winney made sure that the tapes were provided to the Hearing Officer and available to Plaintiff at the Hearing. *Id.*, Ex. C. Indeed, the recording was available at the Hearing and, at Plaintiff's request, he and Boissy listened to the entire recording. Thus it is clear that Plaintiff suffered no prejudice in adequately preparing a defense as evidenced by his ability during the Hearing to express his objections, present testimony and evidence on his behalf, and ask questions when relevant.

Thus, based upon my review, I find that Plaintiff was provided with adequate assistance from Defendant Winney and that Defendants' Motion for Summary Judgment should be **granted** as to this Due Process claim.

c. Impartial Hearing Officer

Plaintiff asserts that Boissy violated his Due Process rights during the Hearing in various ways, specifically, in failing to rule on his objections; in failing to adequately explain the charges to him; in denying him the right to call, or recall, a witness; and in rendering a guilty disposition based on insufficient evidence. Am. Compl. at ¶¶ 27-28, 33, 38(2), 38(4), & 38(5).

An inmate facing a disciplinary hearing is entitled to an impartial hearing officer. *Patterson v. Coughlin*, 905 F.2d 564, 569 (2d Cir. 1990) (*citing Wolff v. McDonnell,* 418 U.S. at 570-71). An impartial hearing officer is one who "does not prejudge the evidence" or an inmate's guilt. *Id.* at 570; *Rodriguez v. Selsky*, 2011 WL 1086001, at *12 (N.D.N.Y. Jan. 25, 2011). Thus, a § 1983 claim that a hearing officer was biased requires more than "an inmate's own subjective belief" to this effect. *Brooks v. Prack*, 77 F. Supp. 3d 301, 316 (W.D.N.Y. 2014) (citing *Francis v. Coughlin*, 891 F.2d 43, 47 (2d Cir. 1989)). A hearing officer satisfies his or her duty of impartiality when "the record contains some evidence to support the officer's findings" and that evidence is reliable. *Scott v. Frederick*, 2015 WL 127864, at *14 (N.D.N.Y. 2015 Jan. 8, 2015) (citing *Superintendent v. Hill*, 472 U.S. 445, 455 (1985) & *Sira v. Morton*, 380 F.3d 57, 76-77 (2d Cir. 2004)).

The Court has reviewed the entire record and finds Plaintiff's claims to be without merit and unsupported by the record. Specifically, Boissy not only noted each of Plaintiff's objections for the record, but he ruled on them as they arose, as, for example, the instance when Plaintiff objected to the timing of the Hearing. Boissy Decl., Ex. B at Bates Stamp 35 & 37-38. Boissy also took Plaintiff's testimony and accepted evidence on his behalf, such as the visiting log, evidencing Plaintiff did not have any visitors on the alleged date of the planned drug smuggling, and the facility visiting schedule, which Plaintiff explained showed that Plaintiff was ineligible to receive visitors on the day in question. *Id.* at Bates Stamp 38-40. When Plaintiff did not seek to call any witnesses, Boissy called the author of the Misbehavior Report, Inspector Klose, who testified to the veracity of the Report and clarified that the date in question was a facility family visiting weekend. *Id.* at Bates Stamp 40-42. Boissy offered Plaintiff the opportunity to ask questions of that witness, and, when he declined, Boissy directed that the audio recording of the phone calls be listened to by both

him and Plaintiff. *Id*. at Bates Stamp 41-43. After that, Boissy not only offered Plaintiff the opportunity to present more evidence, but he endeavored to explain to Plaintiff what was meant by the charges lodged against him, namely the definitions of "conspire" and "solicit," and again asked him if he wished to call any other witness. *Id*. at Bates Stamp 43-45. In fact, Boissy asked Plaintiff three times if he had further evidence and witnesses, which Plaintiff declined and continued to instead place objections on the record.

At no time, either before or after listening to the recording, did Plaintiff seek an adjournment so that he could gather further evidence. Instead, Plaintiff sought to engage Boissy in a discussion as to what was heard or not heard on the recording. The fact that Boissy did not engage in such a conversation does not amount to a Due Process violation. Indeed, it is clear from reviewing the Hearing transcript that Boissy maintained his impartiality by accepting Plaintiff's evidence, hearing his testimony with little interruption, noting and preserving his objections, and soliciting further evidence from Plaintiff in support of his defense. Plaintiff's claim that Boissy did not allow him to question Klose or recall him as a witness is totally belied by the record. Plaintiff continually declined Boissy's invitations to question Klose or call further witnesses. While Plaintiff maintains that he could not question Klose when he was called because he did not hear the substance of the calls, it does not explain why he did not seek to recall Klose upon hearing the recordings. It was only after Boissy read the disposition that Plaintiff first mentioned he sought to question Klose again. Boissy properly denied that untimely request.

Lastly, Boissy rendered a ruling, which he read into the record and reduced to writing, finding Plaintiff guilty of all charges. In this written disposition, Boissy listed seven different items upon which he relied, some of which were documents provided by Plaintiff, to wit: 1) audio tape of

telephone conversation; 2) Grant's testimony; 3) Misbehavior Report; 4) Investigator Klose's testimony; 5) 2011 visiting schedule; 6) inmate log of visits; and 7) inmate phone log. Boissy Decl., Ex. C. The Court has reviewed the evidence presented, and in fact has listened to the subject recordings at length, and finds that, indeed, Boissy's guilty determinations are supported by some evidence. The fact that those determinations were later reversed without explanation is of no moment. What is important is that the evidence supporting Boissy's decision is sufficient to support his findings. *See*, *e.g.*, *Creech v. Schoellkoph*, 688 F. Supp. 2d 205, 214-15 (W.D.N.Y. 2010) (noting that a misbehavior report alone may constitute evidence in a disciplinary hearing).

Having reviewed the record before the Court, I recommend that Defendants' Motion for Summary Judgment be **granted** as to the Due Process claims asserted against Defendant Boissy.

### *3. Defendants Fischer and Venettozi*

Having determined that Plaintiff was provided with all the process he was due, and that neither Defendant Winney nor Defendant Boissy committed any constitutional errors in their respective roles, I find that no claims can be asserted against Defendants Fischer and Venettozi. Indeed, the sole basis for Plaintiff's claim against Fischer is the appeal to him, which he forwarded to Venettozi to decide. As for Venettozi, because I find that no due process violations occurred, there is no basis upon which to find he violated Plaintiff's constitutional rights simply because he affirmed Boissy's determinations. Accordingly, I recommend that Defendants' Motion for Summary Judgment be **granted** as to the claims against Defendants Fischer and Venettozi.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 44) be

**GRANTED** and this action be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[7] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   March 10, 2017
        Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge

---

[7] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).